UNITED STATES of America,
Appellee,

v.

Louis EDELMAN, Defendant-Appellant.

No. 640, Docket 33309.

United States Court of Appeals
Second Circuit.

Argued June 25, 1969.

Decided July 31, 1969.

Joshua N. Koplovitz, New York City, (Koplovitz & Fabricant, New York City, on the brief), for defendant-appellant.

John R. Wing, Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty. for the Southern District of New York, Douglas S. Liebhafsky, Asst. U. S. Atty., on the brief), for appellee.

Before HAYS and FEINBERG, Circuit Judges, and JAMESON, District Judge.*

FEINBERG, Circuit Judge:

Appellant Louis Edelman was found guilty after a jury trial in the United States District Court for the Southern District of New York, Constance Baker Motley, J., on one count of interstate transportation of stolen property in violation of 18 U.S.C. § 2314. He appeals from that judgment of conviction and his sentence of two years in prison and $10,000 fine. For the reasons set forth below, we affirm.

Beginning in the mid-1950's, appellant was employed as a salesman by Herbert Arnot, an art dealer engaged in the business of importing original oil paintings from Europe for resale to art stores and galleries in this country. In June 1966, the employment relationship between appellant and Arnot, long a stormy one, came to an abrupt end. Thereafter, appellant went into business for himself and engaged in direct competition with his former employer. Four months later, in October 1966, Arnot complained to the Federal Bureau of Investigation that he was missing a number of paintings and that he suspected appellant. An investigation was commenced which led to appellant's indictment in April 1967 on a charge that between July 1966 and November 1966 he had illegally transported 256 stolen paintings allegedly worth more than $25,000. The trial took place in November 1968, and appellant was sentenced in January 1969. Appellant has been on bail pending appeal.

At trial appellant testified on his own behalf, admitting that he had sold and shipped not only the paintings in question but numerous others as well. However, according to appellant, the paintings were not stolen. Rather, he testified that he had sold the paintings for Arnot under an agreement whereby appellant made cash discount sales, and this arrangement was devised by Arnot as early as 1956 as a tax avoidance scheme, and that Arnot continued it even after appellant's employment had terminated. Arnot's testimony for the Government was in direct contradiction. He denied that any such arrangement had ever existed and claimed that the paintings in question had been stolen from him. In essence, the theory of the defense was that Arnot had "framed" appellant. Thus, the principal issue at trial was credibility, and if the jury chose to disbelieve appellant—as it obviously did—there was more than sufficient evidence to sustain the conviction. E.g., in November 1966, after appellant's arrest two weeks before, FBI agents executed a search warrant for seven paintings in appellant's office, and appellant repeatedly denied having knowledge of the paintings; after over an hour's search, the agents found the paintings hidden in a back room. Similarly damaging was appellant's response to the reproach of an art dealer for having sold him 114 pictures which were subsequently seized by the FBI as stolen goods; appellant asserted in defense that "they weren't all stolen, there were some of mine in there too." Appellant claims, however, that the jury could not properly assess the credibility issue because of erroneous evidentiary rulings

---

* Of the District of Montana, sitting by designation.

by the district court, both in excluding evidence that would have weakened Arnot's testimony and in allowing testimony that was prejudicial to appellant.

█ In the former category, appellant complains that Judge Motley improperly refused to subpoena customs and post office records and wrongly sustained objections put to a defense witness. Neither claim has merit. The attempt to subpoena the records was apparently part of a defense effort to establish that Arnot had been investigated in connection with possible customs and post office violations, that appellant had knowledge of these violations, and that Arnot instituted the prosecution against appellant to silence him. The logic of this argument is difficult to follow; at best, the probative value of the records as showing bias on the part of Arnot would have been slight. In addition, there was a very real possibility that the records would have been used generally to impeach Arnot as a witness by conduct not resulting in a conviction— an improper use.[1] See United States v. Bowe, 360 F.2d 1, 14–15 (2d Cir.), cert. denied, 385 U.S. 961, 87 S.Ct. 401, 17 L. Ed.2d 306 (1966). The question before us is whether under these circumstances the judge's ruling was an abuse of discretion. We do not think that it was. On the second point, as part of the defense case a New York City art dealer was called and asked whether he had been told by Arnot (1) that Arnot would put anyone out of business who stepped on his toes and (2) that Arnot had a scheme to put appellant out of business. Objections were sustained as calling for hearsay answers and those rulings were proper. That the answers might have been admissible for the non-hearsay purpose of establishing motive or bias apart from any inference about the truth of the matter stated is immaterial at this point. Appellant not only laid no foundation for the admissibility of the answers by questioning Arnot about the statements on cross-examination, see United States v. Hayutin, 398 F.2d 944, 952–953 (2d Cir.) cert. denied, 393 U.S. 961, 89 S.Ct. 400, 21 L.Ed.2d 374 (1968), but also failed to specify a non-hearsay basis for admitting the statements. Under these circumstances, we will not reverse the ruling of the trial judge. See United States v. Cording, 290 F.2d 392, 394 (2d Cir. 1961); C. McCormick, Evidence § 59, at 136 n. 2 (1954). See generally 1 J. Wigmore, Evidence § 18 (3d ed. 1940).

██ Appellant's claim that testimony prejudicial to him was improperly admitted relates to copies of four letters he himself produced during cross-examination of Arnot. The letters were from Arnot to European suppliers, urging them not to deal with appellant and stating that he had run off with Arnot's lists of suppliers and customers and some of his paintings. These letters had been written prior to the time Arnot assertedly discovered and reported that he was missing any paintings, and appellant used them to attack Arnot's testimony on the basis of bias and motive. Later, during re-direct examination, Arnot was asked about these letters and testified that he had never authorized anyone to take them from his files. At one point, appellant's counsel entered a general objection to a question and "to the insinuation also." However, when appellant was later questioned about the letters on his cross-examination, there was no objection; rather, appellant stated that he had received the copies from Arnot's secretary. According to appellant, she had contacted him after his arrest, stated that she did not like what Arnot was doing to him, and had on her own initiative given him the copies. The Government now suggests three theories on which the testimony was admissible: to show similar acts, to show

---

1. Defendant's trial counsel told the judge: I want the jury to know what kind of individual [Arnot] is and whether if he is in fact a party to these prior immoral, vicious and bad acts, that this tends to show that he is the type of person who should not be believed * * *.

access by appellant to Arnot's office after June 1966 when some of the paintings were stolen, and to discredit evidence of appellant's character. It is true that the probative value of the testimony that Arnot had not authorized anyone to remove the letters might have been slight on any of these theories. Indeed, in light of the use to which appellant put the matter (in fact unanswerable, because the secretary had died by the time of trial) it quite possibly weakened rather than stengthened the Government's case. In any event, the alleged prejudice was insubstantial and largely invited by appellant. Certainly admitting this small part of Arnot's testimony did not constitute reversible error. In addition, absent appropriate objection or request below, it was not plain error for the court not to give a limiting instruction on the letters testimony, see United States v. Cifarelli, 401 F.2d 512, 514 (2d Cir.), cert. denied, 393 U.S. 987, 89 S.Ct. 465, 21 L. Ed.2d 448 (1968), and appellant cannot now complain about the Government's reference to it in summation. See, e.g., United States v. Capaldo, 402 F.2d 821, 825 (2d Cir. 1968).

 Finally, appellant claims that his conviction must be reversed because immediately prior to trial the Government was allowed to amend its bill of particulars to correct the dates of several shipments involving 23 of the paintings. The new dates fell between June 1965 and June 1966, up to one year prior to the time alleged in the indictment. Appellant's counsel objected to the amendment; however, he was not able to state what prejudice appellant would suffer by the change and did not request a continuance. In fact, appellant had been furnished more than one year before with a detailed description of all of the paintings covered by the indictment and the transactions involving them. There is really no claim here—as there could not be—that appellant's defense was prejudiced by the change of dates regarding the 23 paintings, since appellant admitted the sale and transportation of all the pictures; his defense was that he had sold them for Arnot under a secret arrangement. Under these circumstances, the jury was properly allowed to consider the evidence as proof of the allegations of the indictment, and the variance between the proof and the indictment as to those dates was immaterial. See, e. g., Owen v. United States, 386 F.2d 774 (5th Cir. 1967); United States v. Weldon, 384 F.2d 772, 774 (2d Cir. 1967); United States v. Doelker, 327 F.2d 343 (6th Cir. 1964).

We have considered appellant's other claims, but they are without merit and, in at least one instance, specifically foreclosed by a most recent ruling of this court. United States v. Covello, 410 F. 2d 536 (2d Cir. 1969), petition for cert. filed, 37 U.S.L.W. 3494 (U.S. June 23, 1969) (No. 1526, 1968 Term; renumbered No. 240, 1969 Term).

Judgment affirmed.