**UNITED STATES of America,**
**Appellee,**

v.

**Lawrence MILLER, Appellant.**

**No. 744, Docket 72–2387.**

United States Court of Appeals,
Second Circuit.

Argued April 5, 1973.

Decided May 22, 1973.

Paul B. Bergman, Asst. U. S. Atty. (Robert A. Morse, U. S. Atty., E. D. N. Y., L. Kevin Sheridan and Howard J. Stechel, Asst. U. S. Attys., on the brief), for appellee.

Lawrence Stern, Mineola, N. Y. (Joel A. Brenner and Richard I. Rosenkranz, Mineola, N. Y., on the brief), for appellant.

Before HAYS, ANDERSON and OAKES, Circuit Judges.

OAKES, Circuit Judge.

Following a seven-day trial before Judge Bartels and a jury in the Eastern District of New York, appellant, Lawrence Miller, was convicted on the two substantive counts and one conspiracy count in an indictment arising from a September, 1970, Queens bank robbery. 18 U.S.C. §§ 371, 2113(a) & (b). The sentences, to run concurrently, were seven years on each of the substantive counts and five years on the conspiracy count. Appellant claims that (1) the evidence against him was insufficient; (2) various acts of prosecutorial misconduct tainted his trial; (3) the scope of cross-examination of a key Government witness was improperly restricted; (4) the trial court's changes of mind in response to a jury request for further instructions were confusing and prejudicial; and (5) an *"Allen"*-type charge in the form in which it was delivered was unduly coercive. We find no error, however, and affirm.

Appellant's contention as to insufficiency is frivolous. Primarily from the testimony of two coconspirators, the jury could have inferred that on the day before the robbery appellant drove the principal conspirator to a meeting where the robbery was planned, "cased" the bank, rehearsed the getaway route and helped procure the getaway car. On the day of the robbery, furthermore, appellant drove the principal conspirator to the robbery rendezvous, protected the bank's entrance while the robbery was in progress, helped in the escape and *stood guard while the booty, in which he shared, was divided*. In short, appellant was neither a passive nor isolated observer of events but rather provided "an essential contribution to the commission of the crime." United States v. Terrell, 474 F.2d 872, 876 (2d Cir. 1973), *quoting* Mack v. United States, 326 F.2d 481, 486 (8th Cir.), cert. denied, 377 U.S. 947, 84 S.Ct. 1355, 12 L.Ed.2d 309 (1964).

■ Appellant's argument that prosecutorial misconduct deprived him of a fair trial is also without merit. He complains that the prosecutor appealed to the jury's "law and order" prejudices in his opening statement by asking the jury to do him, the prosecutor, "a favor" by being "fair to the public interest in law enforcement; that is, be fair to yourselves." This isolated appeal—while ill conceived—was primarily directed to the jurors' role as representatives of the general public; it was not part of a broader scheme to inflame the jury against appellant. *Cf.* United States v. Pfingst, 477 F.2d 177 (2d Cir., 1973),

at 188–189. Further, the trial court admonished the prosecutor on the only arguably objectionable part of this remark, the reference to doing the prosecutor a personal "favor," by reminding the jury shortly after the statement was made that "No favors [are] granted here in this court. We try the case on the evidence, only upon the evidence." Even if limited error did occur, this corrective action would have cured it. United States v. Pfingst, *supra*, at 188; United States v. Sawyer, 469 F.2d 450 (2d Cir. 1972).

Appellant next contends that the prosecutor attempted to promote "guilt by association" by trying to show on cross-examination of appellant that he knew other members of the robbery team. The prosecutor compounded this error, the argument runs, when on summation he claimed that because the testimony of the coconspirators had convicted other members of the robbery team, it should also be sufficient to convict appellant. But on direct examination appellant placed in issue the scope of his association with members of the robbery team and the questions on cross-examination went to discrediting appellant's claims and showing that he was an active, nay a vigorous, member of that group. *See* United States v. Armone, 363 F.2d 385, 403–404 (2d Cir.), cert. denied, Viscardi v. United States, 385 U.S. 957, 87 S.Ct. 391, 17 L.Ed.2d 303 (1966). *Cf.* United States v. Ellis, 461 F.2d 962, 970 (2d Cir.), cert. denied, 409 U.S. 866, 93 S.Ct. 162, 34 L.Ed.2d 115 (1972). In context, the remarks in summation of which appellant complains were part of an attempt to answer arguments impugning the credibility of these key Government witnesses [1] and, while close to the line, do not·warrant, much less require, reversal.

Appellant further claims that there was prejudicial error by virtue of several references during testimony and summation to his participation with the coconspirator witnesses in a prior uncharged bank robbery. The uncharged bank robbery, however, could have been proven on the Government's direct case to show the organization and structure of a larger conspiracy. United States v. Stadter, 336 F.2d 326, 328–329 (2d Cir. 1964), cert. denied, 380 U.S. 945, 85 S.Ct. 1028, 13 L.Ed.2d 964 (1965); C.McCormick, Evidence § 190 at 448–49 (2d ed. 1972), and to show that appellant was not merely an innocent participant in the robbery for which he was tried. United States v. Freedman, 445 F.2d 1220, 1224 (2d Cir. 1971); C.McCormick, *supra,* § 190 at 451; 2 J.Wigmore, Evidence § 302 at 196–201, § 351 at 255–58 (3rd ed. 1940). While it would have been better had a limiting instruction on the use of the prior crime evidence been given, appellant does not suggest that he requested one nor did he object to the charge given on this ground.

Appellant's final argument on prosecutorial misconduct is that the prosecutor through cross-examination and on summation improperly tried to shift to appellant the burden of proving an alibi. The cross-examination complained of, however, was entirely proper, being directed at demonstrating that appellant made a false post-arrest exculpatory statement to the FBI. No objection was made at the time to the remarks in summation now complained of and the court's instructions made it entirely clear that appellant had no burden to prove anything.

Appellant's next point is that the trial court erroneously limited the scope of cross-examination of one of the coconspirator witnesses, who had already

---

1. During summation, counsel for appellant had argued:

    . . . and what you also have to consider is whether they are accomplices, whether they are persons who were slightly involved in the crime and they are testifying against the people more seriously involved in the crime or whether it's exactly the opposite: Whether they are the persons most seriously involved who are looking to exculpate themselves and help themselves by bringing other people in.

been convicted of another crime, by not allowing inquiry into an attempt by him to escape from custody. The claim is that cross-examination might have shown that this witness did not agree to testify against appellant until after Government promises of lenient treatment on the escape attempt. But prior to the escape attempt, the same witness had testified against appellant before the grand jury. Furthermore, the witness had already admitted that the Government did not prosecute him for three other robbery charges and any evidence of lenient treatment for the escape attempt would have been merely cumulative. It was thus well within the trial court's discretion to disallow cross-examination on the point. United States v. Edelman, 414 F.2d 539, 540–541 (2d Cir. 1969), cert. denied, 396 U.S. 1053, 90 S.Ct. 705, 24 L.Ed.2d 698 (1970).

■ Appellant's other contentions go to the court's charge. In response to a jury note Judge Bartels first charged the jury one way on whether the relationship between conspiracy and the substantive offense was "automatic," then reversed himself and then subsequently reversed himself again and reverted to his original answer. The request from the jury was: ". . . if a person is guilty of conspiracy to commit a crime and if the crime was committed, is the person guilty of committing the crime automatically?" The district court replied:

The answer to that is no. He's only guilty of the crime of conspiracy.

Now, whether he committed the other two crimes named in the indictment is something for the jury to decide.

.     .     .     .     .

Now, you are asking me if a person is found guilty of the conspiracy to commit this robbery and if the robbery is actually committed, does he automatically become guilty of the robbery itself. I think that's your question. The answer is no. You must also establish whether he participated in the robbery itself in one form or another.

The court also read and explained, at its request. Title 18 U.S.C. § 2. No objection was taken or could have been taken to the charge on conspiracy. About an hour later after a colloquy the reversal occurred:

The Court: The jury asked me if a person is guilty of conspiracy to commit a crime and if the crime was committed, is the person guilty of committing the crime automatically, and I answered "no." I have to change that answer. The law is that if it is found that at the time the robberies were committed that the particular person was a party to an unlawful conspiracy and that these robberies or substantive offenses were in fact committed in furtherance of the conspiracy, then he can be found guilty of the substantive offenses without more. Do I make myself clear?

If he is a member of the conspiracy in advance at the time, at that particular time that the substantive offenses are committed and those offenses were committed in furtherance of the conspiracy, like conspiracy to commit robbery and you had robberies, then you may be found guilty of the substantive offenses.

The Foreman: He may be found, but automatically?

The Court: That's it, the mere finding that he was a member of the conspiracy and that there were these substantive offenses committed afterwards, it's automatic.

Then, two minutes after the jury's departure following further colloquy,[2] the

2. Immediately after the jury went back to the jury room, the following occurred:

Mr. Yam: For the record again, your Honor, I object and take exception to the last charge.

The Court: It's just a repeat.

Mr. Yam: It's really different. Now you say it was automatic.

The Court: Well, it is.

Mr. Yam: It's not mandatory. May.

Mr. Rosenkranz: I join in the objection.

jury was recalled and given the following instruction:

> Again I didn't give you the proper charge on the question of finding someone guilty of the substantive offenses. If those offenses were committed in furtherance of the conspiracy and if at the time they were committed he was a member of the conspiracy, I said it was automatic because I followed the phraselogy of the foreman of the jury. It's not automatic. You may find him guilty of the substantive charge and you may not. It's not automatic. I just wanted to make that clear.
>
> Thank you very much.

While there was doubtless some temporary jury confusion, the end result was that the court's answer to the question was correct, unobjectionable, and unobjected to. Even if the jury weren't confused, however, it could be argued that it may have thought that the law was unclear or sufficiently doubtful that the court was confused, and accordingly, the argument would run, it might have decided to convict on the substantive offenses on the basis of that doubt or of the court's confusion. Perfection in the conduct of a trial, or in a charge, however, while a consummation devoutly to be wished, is beyond the reach of all of us, and one of the great flexibilities of the American jury system is that this, too, is taken into account by the jury, however much we judges would like to think otherwise.

 The "*Allen*-charge" variation, that "if much the larger number of jurors would hold one way, a dissenting juror should consider whether his or her position was a reasonable one," when read in context was not unduly coercive; other statements delivered at the same time reaffirmed the need for each juror to vote his conscience and in no way to violate "a conviction which he conscien-

---

The Court: Well, I don't know. Yes, bring them back. I think you have got a point.

Mr. Yam: Don't have to.

tiously holds predicated upon the weight and effect of the evidence." *See* United States v. Jennings, 471 F.2d 1310 (2d Cir., 1973), at 1314.

Affirmed.

---

The Court: I think you have a point.

Mr. Yam: It's not automatic.

The Court: Nothing is automatic.

Mr. Yam: That's right.