**UNITED STATES of America,**
**Appellee,**

v.

**Dennis DRUMMOND, Appellant.**

**No. 836, Docket 72–2386.**

United States Court of Appeals,
Second Circuit.

Argued May 3, 1973.

Decided July 5, 1973.

Michael A. Young, New York City (Robert Kasanof, Legal Aid Society, New York City, on the brief), for appellant.

L. Kevin Sheridan, New York City (Howard J. Stechel, Asst. U. S. Atty., on the brief), for appellee.

Before FRIENDLY and HAYS, Circuit Judges, and JAMESON, District Judge.*

HAYS, Circuit Judge:

This is an appeal from a judgment of the United States District Court for the Eastern District of New York finding the defendant guilty of conspiracy to possess and distribute heroin in violation of 21 U.S.C. § 841(a) and § 846. On this appeal, Drummond contends that the District Court erred in allowing the introduction into evidence of cash seized from his person at the time of his arrest and that the District Court improperly restricted the direct examination of the appellant's wife by defense counsel. We have no difficulty in dismissing both points and find it unnecessary to comment further with respect to them. However, the third claim advanced by the appellant, that the conduct of the prosecutor denied him a fair trial, presents a substantial issue. The record clearly shows a consistent pattern of misconduct by the prosecutor in the case before us. Moreover, this court has noticed incidents of this prosecutor's misconduct in the past. Because of the repeated misbehavior of this prosecutor in this and prior cases, we feel compelled to reverse the decision of the trial court on the sole ground of prosecutorial misconduct.

In the present case the prosecutor repeatedly expressed his personal belief in the guilt of appellant; he attempted to use his position as a representative of the United States government to bolster the testimony of government witnesses and to undercut the testimony of the defense witnesses. Again and again he misstated testimony and he persisted in asking irrelevant and argumentative questions. He made improper comments on the evidence and on the witness's testimony.

This is the third time that the conduct of this same assistant United States attorney has required comment by this court.

In United States v. Miller, 478 F.2d 1315, 1317–1318 (2d Cir. 1973), the court characterized the prosecutor's appeal to

---

* Of the United States District Court for the District of Montana, sitting by designation.

the jury as "ill-conceived" and various remarks in summation as "close to the line."

In United States v. Fernandez, 480 F. 2d 726, 741, 742 n.23 (2d Cir. 1973), Judge Friendly said in relation to the conduct of the same prosecutor:

> In light of our holding in Part III, we are not obliged to pass on the defense's claims of prosecutorial misconduct. However, the summation by the Assistant who tried the case surely went to the verge and perhaps beyond it. As this court warned only last year, the use of "first-name epithets at a defendant that might be commonplace in a second-rate movie or television script" is "beneath the dignity of the United States Attorney's office and of the United States as a sovereign," United States v. Benter, 457 F. 2d 1174, 1177 (2 Cir. 1972), notwithstanding the sincerity of the prosecutor's belief that the defendant is guilty or that perjury has been committed.[1]

In the instant case the first trial ended in a mistrial because the jury was unable to reach a verdict. During the first trial the lower court repeatedly warned the prosecutor about his conduct. In fact, on three occasions the judge threatened to declare a mistrial because of the prosecutor's behavior. On one such occasion the court said:

> "I might say, Mr. Stechel, there were a number of instances during the trial when I didn't like a lot of what you did, . . . and I can tell you it's reached the point, and you can read Greenberg [v. United States, 280 F.2d 472 (1st Cir. 1960)] where you have a cumulative effect, the manner in which you smile or lear [sic] at the jury when the correct answer is given or the wrong answer is given.

> . . . I made up my mind that if you go beyond the bounds of propriety in summation or in cross-examination I might very well invite a motion for a mistrial."

At the close of the first trial, the judge commented:

> "you [the Assistant United States Attorney] just reach too far and one day the Court of Appeals, like it has on occasion said about [Assistant United States Attorneys], it's improper, don't ever do it again . . . you could possibly be overturned . . . you offered questionable evidence, you asked questionable questions, and I think if there is a conviction, the conviction is going to be questionable."

Despite these warnings by the trial court, the misconduct continued in the second trial.

The prosecutor repeatedly indicated his disbelief of defendant's witnesses with such statements as "were you lying then or now?"—"Were you lying at that time?"—"Was that the truth or is this the truth?"—"Have you now changed your story three times?" Objections to such questions were raised and sustained, but the prosecutor persisted. Other instances include—"You were arrested last night and you don't remember what you were wearing?"—"You remember then but you don't remember now?" On at least two different occasions the prosecutor characterized the testimony of defense witnesses as "preposterous."

The prosecutor attempted to bolster the testimony of government witnesses by implying that the association of a witness with the government was a guarantee of credibility,[2] and by expressing his personal opinion that the testimony of the government witnesses

---

1. Also in United States v. Echavarria, now *sub judice*, defendant complained of the conduct of the same prosecutor.

2. The prosecutor in the second trial made numerous references to the "sworn testimony of government witnesses" thus implying that they were entitled to credibility even though Judge Mishler had specifically warned him about such statements in the first trial.

was to be believed. The following passage is typical of such comments:

"Detective Bernhardt was cross-examined. He came here to be evaluated by you, and I think, I submit to you, that the testimony of Bernhardt and the government agent here is certainly worthy of the highest credibility."

The prosecutor interjected his beliefs and made an issue of his own credibility as the following statement made in summation illustrates:

"He [appellant] was arrested at 8:55, when his car was blocked on Corneli[a] Street.

"Now, I suppose according to defense counsel's theory, the government is lying about that, too. Why the government would do that, I don't know. It is a very complete scenario to convict this poor man, according to Mr. Krinsky.

"I image [sic] there is a big conspiracy between Manning, Bernhardt, myself, Jones, Miller. Everyone got together, including the people who make up the money lists and the government spent money to buy narcotics and try to concoct enough evidence to convict this poor defendant.

"Well, that is preposterous.

"Now, let's get back to reality and facts.

"The evidence shows that he is not only a narcotics dealer but a liar of the first order. The defendant calls the detectives a liar; Detective Bernhardt, McDonald, Manning, Miller and Jones—all liars.

"According to him, he is the only honest man in the courtroom, and the testimony of all the agents is a pack of lies.

"His testimony is so riddled with lies it insults the intelligence of 14 intelligent people sitting on the jury."

It is hardly necessary to cite authority to establish the impropriety of such conduct. See United States v. Grunberger, 431 F.2d 1062 (2d Cir. 1970); Greenberg v. United States, 280 F.2d 472 (1st Cir. 1960).

In his summation the prosecutor stated that appellant claimed the money found on him at the time of his arrest was planted there by police officers. The appellant never made such a claim and in fact did not deny that he had the money at the time of the arrest.

A prosecutor's misrepresentation of testimony may require reversal because of the inevitable prejudice to the defendant. See, e. g., King v. United States, 125 U.S.App.D.C. 318, 372 F.2d 383, 393 (1967).[3]

We need not decide whether any single one of the acts of prosecutorial misconduct would require us to reverse this conviction and remand this case to the busy Eastern District for a third trial. But the combination of them leaves us no other course.

Reversed.

---

3. The prosecutor also asked several irrelevant questions that could have prejudiced the defendant. For example, the prosecutor asked Detective Bernhardt whether he carried a gun. Judge Mishler in the first trial had sustained an objection to this question on the ground that it "had nothing to do with the case." Nevertheless, the prosecutor persisted in asking the same question in the second trial. It is obvious that the question implied that the detective was dealing with dangerous people and must therefore carry a gun.