**Frank WILLIAMS, Petitioner,**

v.

**Robert HENDERSON, Superintendent, Auburn Correctional Facility, Respondent.**

**No. 77–C–2547.**

United States District Court, E. D. New York.

May 24, 1978.

Helen Bodian, of Prisoner's Legal Services of New York, New York City, for petitioner.

Atty. Gen. Louis J. Lefkowitz, New York City, by Gale D. Berg, Asst. Atty. Gen., New York City, for respondent.

COSTANTINO, District Judge.

This is a petition, pursuant to 28 U.S.C. § 2254, for a writ of habeas corpus brought on the ground that the petitioner was denied due process of law at his state trial by virtue of prosecutorial misconduct. The petition alleges that the prosecutor's improper cross-examination of petitioner, compounded by his improper summation, deprived petitioner of a fair trial in violation of the due process clause of the Fourteenth Amendment.

Following a jury trial in Supreme Court, Kings County, petitioner was convicted of four counts of robbery in the first degree, two counts of robbery in the second degree, and four counts of grand larceny in the third degree stemming from the armed robbery of a bar in Brooklyn. He appealed to the Appellate Division, Second Department, raising the identical claim presented here. The convictions on all counts of robbery in the second degree and grand larceny in the third degree were set aside by the Appellate Division because they were lesser included offenses of robbery in the first degree. *People v. Williams*, 50 A.D.2d 911, 377 N.Y.S.2d 183 (2d Dep't 1975). Petitioner's conviction for robbery in the first degree was affirmed notwithstanding the fact that the State conceded that prosecutorial misconduct at the trial had deprived petitioner of his right to a fair trial and that a new trial was required. (*See* Respondent's Brief to the Appellate Division at 16–19). The Appellate Division found that any error that may have occurred was harmless. 377 N.Y.S.2d at 185. The New York Court of Appeals denied leave to appeal on February 25, 1976.

This court finds that the prosecutor's misconduct at the trial was so egregious as to deprive petitioner of a fair trial, and that the conviction must be set aside.

When the petitioner took the stand in his own behalf, he admitted that he had been convicted of numerous crimes in the past and he catalogued those crimes (90–91).[1] On cross-examination, the following exchange took place (98–102):

Q: In 1971, in Brooklyn, did you commit robbery and did you plead guilty to robbery in the third degree and receive a term of imprisonment for that crime?

A: Yes, I did that.

Q: Did you commit that robbery?

A: Yes.

1. Numbers in parentheses refer to the transcript of petitioner's trial, which took place on May 29 and 30, 1974.

Q: Who did you rob?

A: I don't know. I forget the name. I'm not sure.

Q: Did you have a weapon with you at the time you committed that robbery?

A: No.

Q: You were indicted for robbery in the first degree, armed robbery, were you not?

A: Yes, they alleges an Indictment, you know that, no what it may be. [sic]

Q: Even today, you were indicted for robbery in the first degree?

A: Yes.

Q: In Staten Island, you got indicted for robbery in the first degree?

A: Yes.

Q: All the time it's robbery in the first degree?

A: Yes.

Q: I'm going to ask you to remember back to December 20, 1972, did you plead guilty to attempted robbery in the first degree, a felony, before Judge Brownstein in this courthouse?

A: Yes, sir.

Q: Isn't it a fact that Judge Brownstein, last Friday, May 24th, imposed a three-year sentence on you?

A: Yes.

Q: Did you commit that crime?

A: Yes.

Q: Who did you rob there?

A: Oh,—some person, somebody off of Wall Street, from off Wall Street, over there, I forget the name.

Q: Let me attempt to refresh your recollection. That crime occurred on May 5th, 1972, didn't it?

A: Yes.

Q: The woman who was the victim, was the woman named Mildred Weissberg?

A: Yes.

Q: And you grabbed her pocketbook, didn't you?

A: Yes.

Q: In the course of grabbing her pocketbook, didn't you hit her across the side of the head and throw her down a flight of stairs?

A: No.

Mr. Monahan (defense counsel): Your Honor, I would object to this. We are just going through crimes and convictions that he's had, not the details on every single case.

The Court: Overruled.

Q: You never threw Mrs. Weissberg down a flight of stairs?

A: No.

Q: Didn't you tell—

A: Do you want me to tell you what I did to her?

Q: What did you do to her?

A: I handcuffed her to the elevator. I didn't hit her.

Q: You only handcuffed her to the elevator?

A: Yes.

Q: How about in Staten Island. Did you commit a crime on July 29th, 1973, in Staten Island?

A: Yes.

Q: Did you have a weapon with you when you committed that crime?

A: Yes.

Q: What was it?

A: A pistol, that pistol there.

Q: You mean this is your gun?

A: Yes.

Q: People's 1 in evidence?

A: (No response).

The Court: Answer yes or no please.

The Defendant: Yes.

Q: Was this gun loaded at any time that you had it that day?

A: I don't know.

Q: Well, you went in and you intended to rob the gas station, didn't you?

A: I didn't know if it was loaded because I borrowed the pistol.

Q: Who did you borrow the pistol from?

A: A guy. I can't think of his name. His name is Haynes, I'm not sure.

Q: Isn't it a fact that on July 29th, 1973, about 11:05 P.M., at 830 Bay Street, in Staten Island, you pointed this gun at a Police Officer, and you fired it at him, attempting to cause his death?

The Court: Yes or no?

A: No.

Q: You never pointed this gun at that officer and attempted to take his life?

A: No, no.

■ As can be seen from the above-quoted exchange, the prosecutor went into extensive detail with respect to defendant's prior convictions, and did so over defense objection.[2] Such questioning was highly prejudicial because it could only have "influence[d] the minds of the jurors improperly." *United States v. Puco*, 453 F.2d 539, 542 (2d Cir. 1971), *quoting from United States v. Palumbo*, 401 F.2d 270, 273 (2d Cir. 1968), *cert. denied*, 394 U.S. 947, 89 S.Ct. 1281, 22 L.Ed.2d 480 (1969). Reference to a defendant's criminal record is always highly prejudicial because the "average jury is unable, despite curative instructions [3] to limit the influence of a defendant's criminal record to the issue of credibility [citation omitted]." *United States v. Puco, supra* at 542.[4] Aside from the fact that violent or assaultive crimes generally do not reflect directly on credibility, the potential for prejudice is "greatly enhanced where, as here, the prior offense is similar to the one for which the defendant is on trial." *Id.* (footnote and citations omitted).

■ Even assuming that the reference to the fact of the prior convictions was permissible, reference to the details of those crimes was clearly improper. *United States*

*v. Tomaiolo*, 249 F.2d 683 (2d Cir. 1957). *See also United States v. Dow*, 457 F.2d 246, 250 (7th Cir. 1972); *United States v. Mitchell*, 427 F.2d 644, 647 (3d Cir. 1970). In *Tomaiolo, supra*, the Court of Appeals for the Second Circuit reversed a conviction, in part because the prosecutor had cross-examined the defendant with respect to the details of his prior convictions. The court stated that such questioning "went far beyond what was necessary to establish a criminal conviction for the purpose of impeaching credibility. Its obvious purpose and effect was to do more than to impeach defendant's credibility—it was intended to show that he was a dangerous criminal." 249 F.2d at 687. *See also United States v. Dow, supra.*

Here, the questions with respect to the petitioner throwing one of his victims down a flight of stairs (100) and attempting to kill a police officer (102) were likewise intended to show that petitioner was a dangerous criminal. Neither of those questions was relevant to the crime for which petitioner was on trial and neither was borne out by the evidence (100–101, 110). The questions, which were highly inflammatory, could only have had the effect of indicating that petitioner was a violent and dangerous man, and they were therefore improper. *United States v. Tomaiolo, supra*. Moreover, the prosecutor's misstatement that "[a]ll the time its robbery in the first degree," (99) surely had the effect of indicating a propensity on the part of the petitioner to commit crimes such as the one for which he was on trial. That statement, and the questions leading up to it, were highly prejudicial and improper. *See People v. Condon*, 26 N.Y.2d 139, 309 N.Y.S.2d 152, 155, 257 N.E.2d 615, 617 (1970) (prosecution may not elicit testimony with respect to prior crimes "merely to establish that the

---

2. The court is at a loss to understand the Appellate Division's statement that the cross-examination "was continued without objection," 377 N.Y.S.2d at 185, since the objection clearly appears in the transcript at 100–101.

3. To compound the problem in the instant case, no curative instructions were given either at

the time of the questioning or in the judge's charge to the jury at the close of the case.

4. There is no claim by the State that the extensive cross-examination of petitioner with respect to the details of other crimes was intended for any proper purpose other than to impeach petitioner's credibility.

defendant has a propensity to commit crimes so as to raise a presumption that he would be more apt to have committed the crime charged."). The other examples of improper cross-examination cited by petitioner (*see* Petitioner's Memorandum of Law, at 12–14) simply compounded the prejudice to petitioner. *Cf. United States v. Drummond*, 481 F.2d 62 (2d Cir. 1973).

█ In addition to challenging the cross-examination by the prosecutor, petitioner also challenges the propriety of the prosecutor's summation. This court is of the opinion that the prosecutor's summation "contained a host of infirmities," *United States v. Gonzalez*, 488 F.2d 833, 836 (2d Cir. 1973), and was highly prejudicial and improper. For example, the prosecutor sought to inflame the jury by referring to the victims of the robbery as "people who have guns shoved under their necks, working people" (116). He referred to "Mrs. Weissberg who was thrown down a flight of stairs" (116), when in fact petitioner's uncontradicted testimony was that no such incident had ever occurred (100–101). The prosecutor implied that petitioner claimed the police had planted certain evidence in his wallet (116) when no such claim had been made; rather petitioner's claim, borne out by the arresting officer's own testimony, was that such evidence had been found not on his person, but in the borrowed car he had been driving (108, 109). The prosecutor's mischaracterization of petitioner's claim was clearly improper, *see United States v. Drummond*, 481 F.2d 62, 64 (2d Cir. 1973). The Assistant District Attorney also sought to bolster the credibility of the State's witnesses by referring to one as "a Police Officer who [sic] the Port Authority each and every moment he works he protects your lives, doesn't he?" (117) and to another as "that Detective in your Police Force who came that close to death" (117). This tactic was likewise improper. *See United States v. Drummond, supra* at 62.

While the above-mentioned improprieties in the prosecutor's summation were serious, the most egregious error was the statement at the end of the summation, where the prosecutor stated that:

I think it would be the greatest travesty of justice ever done in a courthouse in this country, the most revolting thing that could be done by a jury, if you acquitted Frank Williams, despite the evidence and the testimony.

It would be the greatest travesty of justice, striking at the very cornerstone of the lives we live, if you took the word of a man convicted three times before of robbery, opposed to your Police Officers, people who protect your lives, your childrens' lives, those you love.

If you are going to believe somebody like Williams, then what do we even need courthouses for? (117–18).

█ This type of highly inflammatory remark cannot be tolerated in our courts of law. The prosecutor's summation, particularly when taken in conjunction with the abuses in his cross-examination of petitioner, leads to the inescapable conclusion that petitioner did not receive a fair trial,[5] especially since the case was a short one in which all of the prosecutorial misconduct took place in one day, *see United States v. White*, 486 F.2d 204, 206 (2d Cir. 1973), and since the prosecutor's improper comments in summation were not in response to any contentions of the defense, *cf. United States v. Santana*, 485 F.2d 365, 370–71 (2d Cir. 1973); *United States v. LaSorsa*, 480 F.2d 522, 526 (2d Cir. 1973). Moreover, the court is convinced that the prosecutor's summation was "part of a broader scheme to inflame the jury against [petitioner]," *United States v. Miller*, 478 F.2d 1315, 1317 (2d Cir. 1973). In addition, the fact that no curative instructions were given, either at

---

**5.** While it is true that no objections to the prosecutor's summation were raised at the trial, such failure to object does not necessarily constitute a waiver of the point, since defense counsel may have wished "to avoid underscoring a prejudicial remark in the minds of the jury by drawing attention to it." *United States v. Grunberger*, 431 F.2d 1062, 1068–69 (2d Cir. 1970). The case must be scrutinized in its totality to determine whether the conviction must be set aside. *Id.*

the time of the improper conduct or in the judge's charge to the jury, *cf. United States v. Miller, supra, United States v. Pfingst,* 477 F.2d 177, 189 (2d Cir. 1973), rendered the prejudice to petitioner even more severe than it otherwise might have been.

 Having determined that the prosecutor's conduct in the State trial was improper and prejudicial to petitioner, the court must still determine whether petitioner's claim is cognizable under this court's habeas corpus jurisdiction. The court agrees with respondent that not every error in a trial constitutes a denial of a constitutional right reviewable in the context of a federal habeas corpus proceeding. Before an error will be so reviewable it must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974). *See also Castillo v. Fay,* 350 F.2d 400 (2d Cir. 1965). In *DeChristoforo,* two remarks in the prosecutor's summation were challenged as having deprived the defendant of a fair trial. The Supreme Court found that if the statements were improper, setting aside the conviction was not required since the prosecutor's comments were "admittedly . . . ambiguous . . . , [were] but one moment in an extended trial and [were] followed by specific disapproving instructions." 416 U.S. at 645, 94 S.Ct. at 1872. In this case, the prosecutor's remarks in his summation were not ambiguous, but were clearly inflammatory, the summation and highly improper cross-examination of petitioner took place not in the context of an extended trial but in the context of a one-day trial, and there were no specific disapproving instructions.[6]

Given all the facts and circumstances of the instant case, the court finds that the prosecutor's misconduct made petitioner's trial "so fundamentally unfair as to deny him due process." *Donnelly v. DeChristoforo,* supra at 645, 94 S.Ct. at 1872. Therefore, the error was of constitutional dimension and is cognizable in a federal habeas

corpus proceeding. The court concludes that petitioner was deprived of a fair trial in violation of the due process clause of the Fourteenth Amendment, and that his conviction must be set aside. Accordingly, the petition for a writ of habeas corpus is granted. Petitioner shall be given a new trial within sixty days of receipt of this order by respondent or the indictment will be dismissed with prejudice.

So ordered.

---

**6.** The trial judge's general instructions to the jury were insufficient to cure the grave prejudice to petitioner created by the prosecutor's misconduct.