**UNITED STATES of America,
Appellee,**

v.

**William WHITE, Defendant-Appellant.**

**No. 152, Docket 73-1597.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 21, 1973.

Decided Oct. 11, 1973.

William Epstein, New York City (Robert Kasanof, The Legal Aid Society, New York City, on the brief), for defendant-appellant.

John D. Gordan, III, Asst. U. S. Atty., for the S.D.N.Y. (Paul J. Curran, U. S. Atty., Eugene F. Bannigan, Asst. U. S. Atty., for the S.D.N.Y., on the brief), for appellee.

Before KAUFMAN, Chief Judge, and SMITH and MULLIGAN, Circuit Judges.

IRVING R. KAUFMAN, Chief Judge:

A few injudicious words uttered in the heat of battle by an Assistant United States Attorney may undo months of preparation by police, prosecutorial, and judicial officers. In some cases, the prosecutor's excess zeal may be so egregious that it taints a conviction, requiring us to order a new trial. When, as in the instant case, the trial is short and devoid of any other claims of error, seemingly trivial prosecutorial impropriety may stand out in bold relief.

William White's trial before Judge MacMahon and a jury lasted only two days and resulted in his conviction for assault with a dangerous weapon within the special territorial jurisdiction of the United States. 18 U.S.C. 113(c). All the evidence was presented on the first day, and the prosecution summation, judge's charge, and verdict were delivered on the second. Although we deplore the Assistant United States Attorney's comments, we do not believe they substantially prejudiced the defendant. Accordingly, we affirm.

We set forth the simple facts in this case so that the prosecutor's remarks on summation may be weighed more meaningfully. On December 19, 1972, during the height of the Christmas rush, William White and David Goodson, co-workers at the Post Office at Eighth Avenue and Thirty-third Street, became embroiled in an argument. Although the reason for their disagreement is unclear, the fires of passion were stoked by the alcohol each had consumed that day.[1] As White and Goodson entered the employees' locker room, their argument erupted into pushing and shoving, and ended dramatically when White took a .32 caliber silver-plated revolver from his locker and shot Goodson in the right thigh.

At trial, White contended that he had brandished the weapon in self-defense and that he had fired it accidentally. To buttress this claim, White testified on direct examination that Goodson had "grabbed" his neck several times and that he fired the shot just after Goodson had moved "like he intended to go to his pocket for something." Although Goodson conceded on cross-examination that he had reached into his pocket "like I had something," he denied that he had gripped White's throat.[2] Had this been all the evidence, the jury would have faced a relatively simple, but factually close, question of credibility. White, however, contradicted himself on cross-examination. He admitted, for example, that he was not being threatened when he fired.[3] Having thus rendered his self-defense claim untenable, White proceeded to undermine his statement that the shooting was accidental when, on re-cross-examination, he testified that the day after the incident he had informed a postal inspector that "the gun went off because all of a sudden my finger got itchy."

Because the evidence of guilt was overwhelming, the jury deliberated for only three and one-half hours (including the luncheon recess) before finding White guilty. Judge MacMahon sentenced White to six months in prison and four and one-half years probation.

I.

As we have observed, appellant's sole claim of error stems from the prosecutor's summation. The solitary blemish on the record, however, is not so insignificant that we can ignore it without comment, especially in view of the fre-

1. The argument began at 3:50 p.m. Goodson testified that he had one beer and a shot of Chivas Regal at lunch. White, who was nicknamed "Wino" by his co-workers, had, true to his appellation, consumed one pint of wine prior to his encounter with Goodson.

2. On cross-examination, however, Goodson testified that he had seized White by the "collarbone." Other inconclusive testimony was presented on the question of self-defense. The government called three postal co-workers who were in the locker room during the altercation. Each of these witnesses, however, saw only a fragment of the fight. Bernardo Trinidad offered no evi-

dence concerning the neck-grabbing incident. Peter Ragaglia testified that he saw one of the combatants clutch the other by the throat, but could not recall whether White or Goodson was the assailant. Only Eddie Wright stated conclusively that he saw Goodson's hands on White's neck. Wright, however, saw this occur only once, not three times as White claimed.

3. Q. I am asking you whether he was threatening you at the time you shot him?
A. No, he was not.
Q. He was not?
A. No.

quency with which allegations of prosecutorial misconduct have come before this court.[4]

■ It is charged here that during his brief summation, comprising only ten pages of the transcript, the Assistant United States Attorney improperly asserted his own belief in White's guilt.[5] Our study of the record discloses that the prosecutor charged twice that White was "lying"[6] and repeatedly indicated that the defense was "fabricated."[7] These tactics were unwise and unnecessary. Although we might expect a character in a Perry Mason melodrama to point to a defendant and brand him a liar,[8] such conduct is inconsistent with the duty of the prosecutor to "seek justice, not merely to convict." ABA Code of Professional Responsibility, Final Draft, 1969, Ethical Consideration 7–13,

at 79. *See* H. Drinker, Legal Ethics 148 (1953).

The prosecutor's intemperate remarks might not have aroused the concern they have if they were uttered at the conclusion of a long and hotly contested trial. But, in a brief trial, and especially one in which the prosecutor's summation was delivered the day after the evidence and the defense summation were presented, the impropriety assumes greater significance. Accordingly, it is better that we issue our admonition in this simple case than face a charge of greater prosecutorial impropriety in a difficult case.

## II.

Although the prosecutor's comments were ill-conceived, reversal is not warranted here if we view his conduct, as

4. In at least six cases in the last six months appellants have included allegations of prosecutorial misconduct at trial among their claims of error on appeal. *See* United States v. Santana, 485 F.2d 365, 370–371 (2d Cir. 1973) (prosecutor's remarks in summation justified as responsive to defense allegations) ; United States v. Drummond, 481 F.2d 62 (2d Cir. 1973) (conviction reversed because of prejudicial statements by Assistant United States Attorney) ; United States v. LaSorsa, 480 F.2d 522, 526 (2d Cir. 1973), cert. denied (1973), 414 U.S. 855, 94 S.Ct. 157, 38 L.Ed.2d 105 (prosecutor's comments in summation justified as responsive to defense counsel's charges) ; United States v. Fernandez, 480 F.2d 726, 741 n. 23 (2d Cir. 1973) (prosecutor's summation criticized) (conviction reversed on other grounds) ; United States v. Miller, 478 F.2d 1315, 1317 (2d Cir. 1973), cert. denied (1973), 414 U.S. 879, 94 S.Ct. 61, 38 L.Ed.2d 125 (prosecutor's remarks in summation were "ill conceived" but not prejudicial) ; United States v. Pfingst, 477 F.2d 177 (2d Cir. 1973), cert. denied (1973), 412 U.S. 941, 93 S.Ct. 2779, 37 L.Ed.2d 400 (improper statement by prosecutor during presentation of evidence cured by trial judge's strong corrective measures). *See also* United States v. Archer, 486 F.2d 670 (2d Cir. 1973) (investigative tactics criticized).

5. White claims also that he was prejudiced by the prosecutor's misstatements of the evidence and exaggeration of the strength of the government's case. Our careful scrutiny of the record indicates that the sole factual

defect in the summation was the prosecutor's suggestion that White had walked "calmly" to his locker to secure his gun. The record, however, is bare of evidence on this score. If White had retreated hastily, it would have been some support for his claim of self-defense. Certainly, the statement that White walked calmly, twice mentioned by the prosecutor in summation, undermined the defense and was a characterization without basis in the record.

White's other attacks on the summation are without merit.

6. "One final word in this case: You must, when you enter your deliberations, decide which of the witnesses is telling the truth. The evidence in this case shows that at least one of them is lying. I suggest to you, ladies and gentlemen, that the evidence in this case shows that that man [indicating] is that one.

What is the evidence that shows he is lying? Well . . . ."

7. For example, the prosecutor charged that "the defendant has fabricated these incidents in order to bolster a specious, meritless argument."

8. At oral argument—by an Assistant other than the trial Assistant—the government attempted to distinguish between the noun and verb forms of the word "lie." Although we appreciate the government's concern with grammatical niceties, we reject the argument. Whether the arrows in the quiver are verbs or nouns, when shot with the skill of a trained archer, their sting is equal.

we must, in the context of the entire trial. United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 239, 242, 60 S.Ct. 811, 84 L.Ed. 1129 (1940); United States v. Berger, 295 U.S. 78, 85, 89, 55 S.Ct. 629, 79 L.Ed. 1314 (1935); United States v. Benter, 457 F.2d 1174, 1178 (2d Cir.) cert. denied 409 U.S. 842, 93 S.Ct. 41, 34 L.Ed.2d 82 (1972); United States v. Grunberger, 431 F.2d 1062, 1069 (2d Cir. 1970).[9] Proof of guilt was clear and convincing. The verdict was ensured by the defendant's words, and not the prosecutor's.

█ Although we are affirming the conviction, we seek by our admonition to remind the federal prosecutor once again of the delicate role he plays. When an Assistant United States Attorney appears in court, and especially in a trial before a jury, he represents and personifies the government. He must prosecute cases diligently and vigorously. The public expects no less. But, he must also perform his task with dignity and self-discipline. The public deserves no less. We recall Justice Black's articulation of the prosecutor's dilemma:

A prosecutor must draw a careful line. On the one hand, he should be fair; he should not seek to arouse passion or engender prejudice. On the other hand, earnestness or even a stirring eloquence cannot convict him of hitting foul blows.

Viereck v. United States, 318 U.S. 236, 253, 63 S.Ct. 561, 569, 87 L.Ed. 734 (1943) (Black, J., dissenting).[10]

█ The exceedingly fine line which distinguishes permissible advocacy from improper excess is to be drawn within the concrete terrain of specific cases. *See* ABA Project on Standards for Criminal Justice, Standards Relating to the Prosecution Function and the Defense Function 127 (1971). Accordingly, we do not intend to formulate per se rules or declare that certain words will automatically trigger mistrials or reversals of convictions. Certainly, advocates may marshal all inferences that the evidence supports and indulge in nonprejudicial flourishes of rhetoric. Eloquence is not misplaced in the courtroom. But the prosecutor's comments in this case did not rise to the level of oratory or eloquence. He engaged, quite simply, in name-calling, but since the prejudice to appellant was minimal, we affirm.

---

9. We note that no objection was interposed to the summation, nor was there a request for curative instructions until after the judge had charged the jury, and then only in general terms.

In the absence of objection, Judge MacMahon did not curtail the prosecutor's summation, nor did he charge the jury to disregard these remarks. He did, however, properly instruct the jury that it was the final arbiter of facts:

It is your memory of the evidence that controls. It is not the way I remember it, nor the way that the lawyers remembered it yesterday or this morning, as they made their closing arguments. If your memory squares with what the lawyers have said you may accept their version of the facts. But to the extent that you have a different recollection, you are bound by your roll [sic] to rely on your own memory.

Counsel did express his displeasure with the summation in his motion to set aside the verdict.

10. We are reminded also of Justice Sutherland's frequently quoted comment on the role of the federal prosecutor:

The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

Berger v. United States, *supra*, 295 U.S. at 88, 55 S.Ct. at 633.