577 F.2d 173
 UNITED STATES of America, Appellee,
v.
Gerald SPRAYREGEN, Defendant-Appellant.
 No. 945, Docket 78-1066.
 United States Court of Appeals,
Second Circuit.
 Argued May 17, 1978.
Decided May 25, 1978.
 
 Jerry L. Siegel, Asst. U. S. Atty., New York City (Robert B. Fiske, Jr., U. S. Atty. for the Southern District of New York, Richard D. Weinberg, Asst. U. S. Atty., New York City, of counsel), for appellee.
 Peter E. Fleming, Jr., New York City (Robert D. Piliero and Curtis, Mallet-Prevost, Colt & Mosle, New York City, of counsel), for defendant-appellant.
 Before KAUFMAN, Chief Judge, and MULLIGAN and VAN GRAAFEILAND, Circuit Judges.
 IRVING R. KAUFMAN, Chief Judge:
 
 
 1
 Gerald Sprayregen appeals from his conviction on all counts of an 11-count indictment, charging him with the preparation and dissemination of false financial statements relating to the John's Bargain Stores Corp., and with the subsequent concealment of this massive fraud. Specifically, appellant was convicted of submitting materially false financial reports to the SEC, to credit agencies, and to the First Pennsylvania Banking & Trust Co. so that he could receive a loan. Sprayregen now raises two issues on appeal. He contends that the prosecutor's repeated assertions during summation that he was lying contravene this court's holdings in United States v. White, 486 F.2d 204 (2d Cir. 1973) and United States v. Bivona, 487 F.2d 443 (2d Cir. 1973). He also argues that, in important particulars, the testimony of two material witnesses for the government differed, and that, to the extent the government disbelieved one of them, it knowingly countenanced the presentation of perjured testimony. Although we affirm, we do not mean thereby to indicate approval of the prosecutor's conduct.
 
 I.
 
 2
 At trial, the government established its case against Sprayregen primarily through the testimony of two witnesses, Jose Umana, the comptroller of John's Bargain Stores, and Walter Spengler, the chain's Vice President of Operations subsequent to 1972. Their testimony, taken, as we must, in the light most favorable to the government, see United States v. Freeman, 498 F.2d 569 (2d Cir. 1974), established that, in 1969, a group of investors, including several sympathetic to the so-called Sprayregen interests, acquired control of John's Bargain Stores. Immediately thereafter, this group, and the president of John's, one David Cohen, committed the corporation to an agreement whereby the stores agreed to purchase the appellant's brokerage firm, Sprayregen & Co., for a sum estimated at fifteen million dollars. Suppliers, apparently concerned over the exercise of this "put agreement" and its effect on the corporation's liquidity, commenced refusing credit to the John's Bargain Stores chain consisting of over 200 discount outlets. Throughout 1970, in fact, conditions worsened as store managers, forced to purchase inferior merchandise, found these goods were stagnating on the shelves.
 
 
 3
 Seeking to revitalize the chain, Sprayregen and Walter Spengler, then newly hired, decided to undertake a "mark down" program, reducing the price of merchandise in an effort to increase volume and generate cash. The amount of reductions was greater than expected, however, and the chain sustained a loss of approximately 1.8 million dollars. The instant criminal action derives from appellant's efforts, along with Spengler and Umana, to conceal this loss through a manipulation of the amount credited to John's Bargain Stores' inventory. When, moreover, it appeared that this fraud was about to be discovered appellant, in concert with Spengler and Umana, agreed to fabricate a story placing all blame for the fraud on Umana. This false tale was adhered to until Umana and, eventually Spengler, recounted a totally different version of the events concerning John's Bargain Stores, and pleaded guilty to charges relating to the fraud. The appellant, who testified in his own behalf, denied any knowledge of the actions taken at John's to conceal the chain's massive losses.
 
 
 4
 The case presented to the jury, accordingly, was one dependent on the jury's assessment of credibility. If the jurors credited the testimony of Umana and Spengler, or portions of their testimony, as their verdict indicates they must have, the government's case against the appellant was concededly compelling.
 
 II.
 
 5
 It is in this context that Sprayregen's complaint regarding the propriety of the prosecutor's remarks during summation must be considered.[1] In United States v. White, supra, and United States v. Bivona, supra, we instructed prosecutors to perform their tasks with dignity and self-discipline, and directed them to refrain from expressing their personal beliefs that a defendant is lying. In both cases, however, we noted that the defendant was not prejudiced by the excesses of the government attorney. Although White and Bivona dealt with relatively short trials, where an intemperate summation would be more likely to influence a jury, we observed that the strength of the government's case and the court's proper instruction to the jury that it was the sole judge of credibility rendered prejudice unlikely. The United States Attorney here certainly did not exercise the restraint appropriate to his office, and his overzealousness contravened our clear instructions in White and Bivona.[2] Yet, it is even less likely than in White and Bivona that his remarks occasioned any prejudice to the defendant. The case against Sprayregen was, as we have indicated, an extremely strong one once the jury resolved the issue of credibility against him. Moreover, the summation, which alone took the better part of an afternoon, came at the end of a long and difficult trial, lasting almost four weeks. The jury was to be swayed either by Sprayregen or by the two primary witnesses for the government, and it is unlikely that a few intemperate remarks made in the course of a month-long trial affected its result.
 
 
 6
 Sprayregen's second contention is equally without merit. While it is clear that Spengler's recollection did not comport precisely with Umana's, this is hardly a situation where the prosecution knowingly offered false evidence. See Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1954); Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). The government presented Umana's and Spengler's testimony to the jury with their inconsistencies openly submitted for its consideration and the jury chose to believe the government's evidence despite the differences. Indeed, it would be far more troubling if the government coached its witnesses to present an identical story.
 
 
 7
 Accordingly, we affirm.
 
 
 
 [1]
 The following are examples of the prosecutor's objectionable statements cited by appellant:
 Ladies and gentlemen, that man would tell you the sky was green if it would permit him to escape conviction here. . . . He will sit there and tell you that your skin is blue if he thinks it will get him off.
 and
 Then I would ask you to compare that (the government's evidence), ladies and gentlemen, with the testimony of that man, the defendant, who stood up there and I don't hesitate and bald-facedly lied to you repeatedly.
 The prosecutor admitted at argument that, had he been aware of this Court's holdings in White, supra, and Bivona, supra, he would have refrained from making these remarks.
 
 
 [2]
 As we noted, the Assistant United States Attorney admitted on argument that he had not been familiar with these cases. We direct his attention further to Standard 5.8(b) of the A.B.A. Prosecution Standards:
 It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence of the guilt of the defendant.
 All prosecutors in this circuit should be guided by this rule in the future.