# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

_____

**No. ACM 40089**

_____

**UNITED STATES**
*Appellee*

**v.**

**Joshua D. MCCAMERON**
Senior Airman (E-4), U.S. Air Force, *Appellant*

_____

Appeal from the United States Air Force Trial Judiciary

Decided 17 November 2022

_____

*Military Judge:* Charles G. Warren.

*Sentence:* Sentence adjudged on 23 January 2021 by GCM convened at Barksdale Air Force Base, Louisiana. Sentence entered by military judge on 23 February 2021: Dishonorable discharge, confinement for 27 months, reduction to E-1, $600.00 fine, and a reprimand.

*For Appellant:* Major Sara J. Hickmon, USAF; Major Eshawn R. Rawlley, USAF.

*For Appellee:* Lieutenant Colonel Thomas J. Alford, USAF; Major Morgan R. Christie, USAF; Major John P. Patera, USAF; Captain Jocelyn Q. Wright, USAF; Mary Ellen Payne, Esquire.

Before KEY, ANNEXSTAD, and GRUEN, *Appellate Military Judges*.

Judge ANNEXSTAD delivered the opinion of the court, in which Senior Judge KEY and Judge GRUEN joined.

_____

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

_____

ANNEXSTAD, Judge:

A military judge sitting as a general court-martial convicted Appellant, in accordance with his pleas, of two specifications of damaging non-military property[1] and one specification of assault consummated by a battery, in violation of Articles 109 and 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 909, 928.[2] Also, consistent with his pleas, a panel of officer members found Appellant not guilty of one specification of aggravated assault with a dangerous weapon, but contrary to his pleas, guilty of the lesser included offense of simple assault with an unloaded firearm, in violation Article 128, UCMJ, 10 U.S.C. § 928. Appellant elected to be sentenced by the military judge, who sentenced Appellant to a dishonorable discharge, confinement for 27 months, reduction to the grade of E-1, a $600.00 fine, and a reprimand. The convening authority took no action on the findings or sentence.[3]

Appellant raises eight issues which we have reworded: (1) whether the court-martial lacked jurisdiction because Specification 1 of Charge I alleging damage to the wall in Appellant's residence failed to state an offense, and consequently whether the military judge erred in accepting Appellant's guilty plea to this specification; (2) whether the military judge abused his discretion by admitting character evidence under Mil R. Evid. 404(b); (3) whether Appellant was denied the effective assistance of counsel under the Sixth Amendment[4] for alleged deficiencies in the performance of his trial defense counsel; (4) whether the military judge erred in instructing members on the lesser included offense of simple assault with an unloaded firearm; (5) whether trial counsel committed prosecutorial misconduct during his findings argument; (6) whether Appellant's trial defense counsel were ineffective in not objecting to trial counsel's findings argument; (7) whether the military judge erred by considering improper rebuttal and aggravation evidence during sentencing; and (8) whether the military judge erred by denying a defense motion requesting that the military judge instruct the panel that a guilty verdict must be unanimous.[5]

---

[1] Specification 1 of Charge I concerned damage to a wall in Appellant's residence. Specification 2 of Charge I concerned damage to a cell phone owned by Appellant's spouse.

[2] All references to the UCMJ and the Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.).

[3] On 10 February 2021 the convening authority deferred Appellant's reduction in grade until the date the military judge signed the entry of judgment and waived all automatic forfeitures for a period of six months for the benefit of Appellant's dependents.

[4] U.S. CONST. amend. VI.

[5] Appellant also raises an issue with the entry of judgment (EoJ). Specifically, Appellant highlights that the summary of the offenses on the EoJ fails to state the location

With respect to issues (2), (4), (7), and (8) we have carefully considered Appellant's contentions and find they do not require further discussion or warrant relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987). We consider issues (3) and (6) together because both allege that Appellant's trial defense counsel rendered ineffective assistance. We agree with Appellant that his guilty plea to Specification 1 of Charge I is not provident. Accordingly, we set aside the finding of guilty as to that specification. We reassess Appellant's sentence to a dishonorable discharge, confinement for 27 months, reduction to the grade of E-1, a $500.00 fine, and a reprimand. Finding no other error that materially prejudiced a substantial right of Appellant, we affirm the remaining findings of guilty and the sentence as reassessed.

## I. BACKGROUND

Appellant enlisted in the United States Air Force in April 2017. At the time of his enlistment, Appellant was married to FM and the couple had one child. The family lived together in privatized housing (a rental home) on Barksdale Air Force Base (AFB), Louisiana, where Appellant worked as a munition specialist. In October 2017, the couple welcomed their second child.

In June 2019, Appellant and FM decided to separate. FM moved to Indiana with their children and Appellant remained at Barksdale AFB.[6] At some point after their separation, the two decided to divorce. The couple continued to speak to one another over the telephone, often arguing about each other's romantic interests. FM testified that during one phone call, Appellant become upset that FM was dating another man. She described that Appellant was screaming, punching, and throwing things during the call.

Later that day, Appellant and FM spoke over FaceTime.[7] During this call, Appellant told FM that he loved her and wanted to "fix things" between them. FM stated her ambivalence about reuniting. FM testified that after she made these statements, Appellant put a handgun to his head and threatened suicide if she did not return to Louisiana. The following day, FM drove to Barksdale AFB from Indiana with her two children. She arrived at Appellant's house that evening. Shortly thereafter, Appellant and FM retired to the master bedroom,

---

where the offenses occurred. Appellant does not allege prejudice, but requests that this court modify the EoJ to include the location of the offenses. We find this particular omission to be immaterial under the law. We have considered whether to exercise our discretion to modify the EoJ ourselves, and we decline to do so.

[6] Appellant also had a son from a previous relationship who continued to live with him at Barksdale AFB.

[7] FaceTime is a video-teleconferencing application.

where Appellant surprised FM with flowers, candy, and a card. FM then stated that she became upset over the fact that Appellant had "had another woman" in their bed, which prompted an argument over perceived mutual marital infidelities. Later that night, she and Appellant had sex. Soon thereafter, Appellant began looking at FM's phone and scrolled through messages that she had exchanged with other people. Appellant then became upset by a message he saw between FM and another man, and smashed her phone into her face, causing the phone to strike her in the nose and forehead. The impact of the phone left a cut on FM's nose, caused her nose to bleed, and left a bruise on her forehead. During his guilty plea inquiry, Appellant described how he then grabbed FM's phone and threw it at the floor of the bedroom. He further explained to the military judge that when the phone hit the floor, it separated from the case and the case became lodged in the wall.

FM testified that as she recovered from the blow to her face, Appellant left the room and retrieved his handgun. FM then stated that she went to the bathroom to wipe "the blood off [her] nose and kinda get[ ] [her]self together." FM stated that while she was in the bathroom, she heard Appellant load the gun. She then described that when she exited the bathroom, Appellant pointed the gun at her and told her to "get on [her] f[**]king knees." Appellant then demanded to know if FM had been with other men while they were separated. Eventually, Appellant turned the gun on himself, and then asked FM whether she would help him "fix" his "demons." FM promised to support Appellant.

FM testified that Appellant eventually calmed down, stowed the gun in a holster, and tucked the holster in his waistband. FM stated that she then told Appellant that she was going to go to the shoppette on base and buy an energy drink. She testified that after she left the house, she went to the nearby house of a friend, BN. She stated that after she told BN what had happened, BN called 9-1-1. A few minutes later, security forces personnel arrived at Appellant's house and found him in the backyard. Security forces personnel searched Appellant's home and recovered a handgun in a holster from a six-and-a-half-foot high cabinet in Appellant's laundry room. At trial, FM identified the handgun as the same one Appellant had pointed at her.

## II. DISCUSSION

### A. Providence of Appellant's Plea

On appeal, Appellant attacks the validity of his guilty plea to Specification 1 of Charge I, a violation of Article 109, UCMJ, 10 U.S.C. § 909, which alleged Appellant had damaged the wall of his rental home. As discussed below, Appellant essentially argues the Government charged Appellant with damaging personal property when he should have been charged with wasting or spoiling real property. Based upon this theory, he variously alleges the perceived defect

means the specification failed to state an offense, his plea was improvident, the military judge erred in accepting his plea, and the court-martial never had jurisdiction over the offense in the first place. Appellant further contends that his guilty plea did not operate to waive the above issues by asserting that the President of the United States exceeded his power under Article 36(a), UCMJ, 10 U.S.C. § 836(a), when he amended Rule for Courts-Martial (R.C.M.) 907 and made failure to state an offense a waivable objection. We agree with Appellant that there is a substantial basis in law and fact to question Appellant's plea of guilty to Specification 1 of Charge I, and we grant relief in our decretal paragraph.

### 1. Additional Background

At trial, Appellant's counsel entered a plea of guilty for Appellant to Specification 1 of Charge I, a violation of Article 109, UCMJ. When describing the charge, the military judge told Appellant:

> In Specification 1 of Charge I, you are charged with the offense of Damaging Non-Military Property, in violation of Article 109, Uniform Code of Military Justice. By pleading guilty to this offense, you are admitting that the following elements are true and accurately describe what you did:
>
> One, that at or near Barksdale Air Force Base, Louisiana, on or about 4 September 2019, you willfully and wrongfully damaged certain *personal property,* that is the wall of your rental home by throwing a cell phone at the wall and thereby damaging the wall;
>
> Second, that the property belonged to Hunt Military Housing Shared Services, LLC (Limited Liability Corporation); and
>
> Three, that the damage was less than $1,000.

(Emphasis added).

The military judge subsequently advised Appellant, "Damage consists of any physical injury to the property." During the guilty plea inquiry with the military judge, Appellant admitted to damaging the wall of his rental home, which he called "private property." Appellant also testified that he had repaired the damage himself and that when he vacated the rental property at the termination of his lease period, the move-out inspector noted no damage to the wall. No evidence was presented during findings tending to prove beyond a reasonable doubt that the wall in question was permanently damaged.

### 2. Law

We review a military judge's decision to accept a guilty plea for an abuse of discretion. *United States v. Blouin*, 74 M.J. 247, 251 (C.A.A.F. 2015) (citation

omitted). "A military judge abuses this discretion if he fails to obtain from the accused an adequate factual basis to support the plea -- an area in which we afford significant deference." *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008) (citation omitted).

"The test for an abuse of discretion in accepting a guilty plea is whether the record shows a substantial basis in law or fact for questioning the plea." *United States v. Moon*, 73 M.J. 382, 386 (C.A.A.F. 2014) (citation omitted). An appellant bears the "burden to demonstrate a substantial basis in law and fact for questioning the plea." *United States v. Finch*, 73 M.J. 144, 148 (C.A.A.F. 2014) (quoting *United States v. Negron*, 60 M.J. 136, 141 (C.A.A.F. 2004)).

"[W]hen a plea of guilty is attacked for the first time on appeal, the facts will be viewed in the light most favorable to the [G]overnment." *United States v. Arnold*, 40 M.J. 744, 745 (A.F.C.M.R. 1994) (citation omitted).

"The military judge shall not accept a plea of guilty without making such inquiry of the accused as shall satisfy the military judge that there is a factual basis for the plea." R.C.M. 910(e). When entering a guilty plea, the accused should understand the law in relation to the facts. *United States v. Care*, 40 C.M.R. 247, 251 (C.M.A. 1969). "An essential aspect of informing [an appellant] of the nature of the offense is a correct definition of legal concepts. The judge's failure to do so may render the plea improvident." *Negron*, 60 M.J. at 141 (citations omitted).

The record of trial must show that the military judge "questioned the accused about what he did or did not do, and what he intended." *Care*, 40 C.M.R. at 253. This is to make clear to the military judge whether the accused's acts or omissions constitute the offense to which he is pleading guilty. *Id.* "If an accused sets up matter inconsistent with the plea at any time during the proceeding, the military judge must either resolve the apparent inconsistency or reject the plea." *United States v. Hines*, 73 M.J. 119, 124 (C.A.A.F. 2014) (internal quotation marks and citation omitted).

"This court must find a substantial conflict between the plea and the accused's statements or other evidence in order to set aside a guilty plea. The mere possibility of a conflict is not sufficient." *Id.* (internal quotation marks and citation omitted). We apply a "substantial basis" test by determining "whether there is something in the record of trial, with regard to the factual basis or the law, that would raise a substantial question regarding the appellant's guilty plea." *Inabinette*, 66 M.J. at 322.

In reviewing the providence of an appellant's guilty pleas, "we consider his colloquy with the military judge, as well any inferences that may reasonably be drawn from it." *United States v. Timsuren*, 72 M.J. 823, 828 (A.F. Ct. Crim. App. 2013) (quoting *United States v. Carr*, 65 M.J. 39, 41 (C.A.A.F. 2007)).

Article 109, UCMJ states: "Any person subject to this chapter who willfully or recklessly wastes, spoils, or otherwise willfully and wrongfully destroys or damages any property other than military property of the United States shall be punished as a court-martial may direct." 10 U.S.C. § 909.

The specification for which the military judge found Appellant guilty states that Appellant

> did, at or near Barksdale Air Force Base, Louisiana, on or about 4 September 2019, willfully and wrongfully damage the wall of his rental home by throwing a cell phone, at the floor of his rental home, the amount of said damage being in the sum of less than $1,000[.00], the property of Hunt Military Housing Shared Services LLC.

"Article 109 proscribes willful or reckless waste or spoilation of the real property of another. The terms 'wastes' and 'spoils' as used in this article refer to such wrongful acts of voluntary *destruction of or permanent damage to* real property . . . ." *Manual for Courts-Martial, United States* (2019 ed.) (2019 *MCM*), pt. IV, ¶ 45.c.(1) (emphasis added).

Article 109 also "proscribes the willful and wrongful *destruction or damage* of the personal property of another. To be destroyed, the property need not be completely demolished or annihilated, but must be sufficiently injured to be useless for its intended purpose. Damage consists of *any physical injury* to the property." 2019 *MCM*, pt. IV, ¶ 45.c.(2) (emphasis added).

### 3. Analysis

As a panel of our sister service court recognized in *United States v. Dentice,* ARMY 20130591, 2014 CCA LEXIS 589 (A. Ct. Crim. App. 15 Aug. 2014) (unpub. op.), the root cause of the problem in Appellant's case

> is the fact that Article 109, UCMJ, proscribes two related but different offenses . . . . One offense relates to the willful or reckless waste or spoilation of the *real property* of another. The other offense relates to the willful and wrongful destruction of the *personal property* of another.

*Id.* at *4 (omission in original) (quoting *United States v. Weaver*, 48 C.M.R. 856, 856 (A.C.M.R. 1974)); *see also United States v. Bernacki*, 33 C.M.R. 173, 175 (C.M.A. 1963) (analysis of Article 109, UCMJ, "indicates two offenses are denounced: the waste or spoilation of real property[ ] and destruction or damage to personalty"); *United States v. Jeter*, 74 M.J. 772, 775 (A.F. Ct. Crim. App. 1 Jul. 2015) (finding the President created "two offenses within the ambit of Article 109, UCMJ, based on the type of the property at issue: the wasting or spoiling of real property and the destroying or damaging of personal property").

Therefore, we read Article 109, UCMJ, as providing for two distinct theories of liability, "each dependent on the nature of the property at issue: real property or personal property." *Dentice,* 2014 CCA LEXIS 589, at *5.

We find that the military judge erred by instructing Appellant that he was pleading guilty to damaging "personal property" when the wall of his residence was real, not personal, property. *Id.* at *6 (finding that the interior wall of on-post quarters is real, not personal, property). Additionally, we find that the military judge erred when he instructed Appellant that the damage to the wall must only consist of physical injury to the property to be convicted—as opposed to the destruction or permanent damage required when the damage is to real property. Lastly, we find that the military judge's failure to correctly define the damage required for real property set up a substantial conflict between the plea and the accused's statements. Here, Appellant's statements during the plea colloquy clearly indicated that the damage to the wall of his residence was easily repaired and that there was no permanent damage to the wall. As a result of these errors, we are not confident Appellant understood the nature of the offense of which he was charged and pleaded guilty. We therefore find a substantial basis in law and fact to question Appellant's guilty plea to Specification 1 of Charge I. Consistent with this assessment, we set aside the finding as to Specification 1 of Charge I.

### 4. Sentence Reassessment

Because we are setting aside Appellant's conviction for the first specification of Charge I, we must determine whether we should remand his case for a new hearing on sentence or exercise our "broad discretion" and reassess the sentence ourselves. *See United States v. Winckelmann*, 73 M.J. 11, 13 (C.A.A.F. 2013). If we determine to our satisfaction "that, absent any error, the sentence adjudged would have been of at least a certain severity, then a sentence of that severity or less will be free of prejudicial effects of error . . . ." *Id.* at 15 (omission in original) (quoting *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986)). In making this determination, we consider whether: (1) there were dramatic changes in the penalty landscape; (2) Appellant was sentenced by members or a military judge; (3) the remaining charges "capture the gravamen" of the originally charged conduct; and (4) we are familiar with the remaining offenses such that we can reasonably determine what sentence would have been imposed at trial. *Id.* at 15–16.

Here, Appellant elected under R.C.M. 1002(b)(1) to be sentenced by the military judge. The military judge, in accordance with R.C.M. 1002(d)(2), specified the following segmented sentence for confinement and fines: a $100.00 fine for damaging the wall; a $500.00 fine for damaging the phone; 3 months of confinement for striking FM; and 24 months of confinement for assaulting FM with an unloaded firearm. The military judge determined that all periods of

confinement were to run consecutively. Additionally, the military judge sentenced Appellant to a dishonorable discharge, reduction to the grade of E-1, and a reprimand.

Applying the *Winckelmann* factors, we determine that Appellant was sentenced by a military judge, and that the remaining offenses substantially capture the scope of the original charged offenses. We also find that there is not a dramatic change in the penalty landscape. It is worth noting here that we also have the benefit of the military judge's segmented sentence in this case. It is clear from the record, and the adjudged sentence, that the military judge viewed both of the assault specifications under Charge II as significantly more serious than the damaging property specifications of Charge I. This is evidenced by the fact that the military judge only adjudged fines for the specifications of Charge I, and that all adjudged periods of confinement applied to the specifications of Charge II. Furthermore, we find the convening authority's reprimand is probative on this issue as it only reprimands Appellant for the assaults he committed against FM. Finally, we are very familiar with the remaining offenses in this case, and we can reliably determine the sentence which would have been imposed for those offenses in the absence of the wall-damage specification. We determine Appellant's sentence for just the remaining specifications would have been no less than a dishonorable discharge, confinement for 27 months, reduction to the grade of E-1, a $500.00 fine, and a reprimand.

## B. Trial Counsel's Findings Argument

Appellant argues that several comments made by trial counsel during findings and rebuttal argument constitute improper argument and prosecutorial misconduct. Appellant claims that trial counsel's findings and rebuttal argument included facts not in evidence, that trial counsel expressed his personal opinion on the strength of the Government's case, and that trial counsel vouched for the credibility of FM. We conclude Appellant was not prejudiced by trial counsel's argument and is therefore not entitled to relief.

### 1. Additional Background

Before trial counsel began his findings argument, the military judge provided the panel with the following instructions:

> At this time, members, you will hear arguments by counsel. You'll hear an exposition of the facts by counsel for both sides as they view them. Bear in mind that the arguments of counsel are not themselves evidence. Argument is made by counsel to assist you in understanding and evaluating the evidence, but you must

base your determination of the issues in this case on the evidence as you remember it and apply the law as I have given it to you.

In general, I will allow the counsel to provide you with their views and interpretations of the evidence and leave it to your recollection as to what the evidence did or did not show. If counsel appear to you to be mischaracterizing the evidence, you may consider that matter and the amount of credence you decide to give to any arguments by counsel.

During trial counsel's closing argument, he discussed the elements of the lesser included offense of simple assault. After reviewing the first two elements, trial counsel discussed the third element that the "offer was done with unlawful force or violence." Trial counsel argued,

I can't imagine in the context of this how anyone could argue this wasn't done with force or violence. Immediately preceded by a battery, immediately preceded by property destruction, and immediately preceded by racking the slide and pointing the gun followed by "Get on your f[**]king knees" was absolutely done with force and violence.

Later during trial counsel's closing argument, he described the manner in which Appellant threw FM's phone at her, and made the statement that Appellant threw the phone with his left hand. Trial counsel then argued that Appellant was left-handed because, *inter alia*, "he has a left-handed holster." During her closing argument trial defense counsel rebutted trial counsel's assertion that Appellant was left-handed, saying, "[T]ake a look at my client. He's been writing with his right hand. He is not left-handed." In sustaining trial counsel's objection for facts not in evidence, the military judge instructed the members:

[B]y the same measure, like trial counsel's earlier note about whether the accused is right or left-handed . . . it is up to you to look at the holster to determine whether or not that is left-handed or not. The non-testimony and actions of [Appellant] in taking notes and whatnot, are not facts in evidence here and are to be disregarded by the members.

In his rebuttal argument, trial counsel then argued,

Now, members, I made a mistake. I said it was a left-handed holster. . . . I'm not a gun guy. I don't know a lot about it, but I can tell you after looking at it, it's an inside the waistband holster which, again, is independent corroboration of [FM]'s testimony that the accused took the firearm, holstered it, and tucked

it inside of his pants. Because it is an inside the pants, concealed carry instrument.

Also during his rebuttal argument, trial counsel addressed trial defense counsel's argument that investigators' failure to dust the firearm for fingerprints amounted to reasonable doubt. Trial counsel directly addressed the panel member who twice asked about fingerprints, saying:

> Let's talk about red herrings first. Fingerprints. Now Captain [NM], I had the same questions you did when I first got this case. Did they test the gun for fingerprints, right? That might tell us who touched the gun, who was in possession of it, who manipulated it, but you would expect a gun in the possession of the accused, his property in his home to have his fingerprints. That does not make it more or less likely that he pointed it at his wife. The mere fact that his hands were on it doesn't make it more likely that he committed an assault, and that's why testing of fingerprints has no probative value. It doesn't matter. It wouldn't exculpate him, it wouldn't incriminate him. So, the fingerprints [are] a complete red herring to the facts of this case.

During his rebuttal argument, trial counsel also addressed trial defense counsel's argument that it was reasonably possible that FM, not Appellant, placed the firearm in the six-and-a-half-foot high cabinet in the laundry room prior to it being discovered by security forces. Trial defense counsel had claimed that the Government failed to introduce evidence—such as FM's height—that would rule out such a possibility. Trial counsel argued:

> Now, defense [counsel] said you have no idea how tall [FM] is, but you can absolutely observe demeanor and the appearance of witnesses as they come before this court-martial, and you did that. You saw her come from the gallery and come sit here, and you saw exactly how tall she is. She's about 5' tall. This argument that you simply have no idea is simply false. You saw how tall she is.

Finally, during his rebuttal argument, trial counsel addressed the Defense's contention that FM lacked credibility because, *inter alia*, she lied under oath during a child custody hearing. While offering an explanation for FM's motivation during that hearing, trial counsel argued:

> Now, it's true [FM] did lie under oath at a child custody hearing for her child, as she testified, [Z]. The first child that taught her how to be a mother, and not all lies are created equal. You have to judge for yourself the moral implications of this lie. She explained to you exactly why she did it, because [Z] may have gone

11

> to a home with a drug using mother [and] an absent father, and she thought that she could provide a better more stable home for him. She lied for a child, and I would submit to you that if we were in that situation and you had to make the choice between the welfare of someone you loved such as a child, it wouldn't be such an easy choice. And the question about it, and this is significant, in this courtroom today, she admitted she told the truth.
>
> A liar, as the defense has characterized her, would continue to lie, would have denied it, would have sought to explain it in a less-credible way, would have continued the lie and presumably even [been] caught in the lie. She admitted it. She [owned] up to it, and that is worthy of your consideration of judging her credibility and the testimony in this court.

Defense counsel did not object to the above referenced portions of trial counsel's argument and rebuttal argument.

### 2. Law

"We review prosecutorial misconduct and improper argument de novo and where . . . no objection is made, we review for plain error." *United States v. Voorhees*, 79 M.J. 5, 9 (C.A.A.F. 2019) (citing *United States v. Andrews*, 77 M.J. 393, 398 (C.A.A.F. 2018)).

"Plain error occurs when (1) there is error, (2) the error is plain or obvious, and (3) the error results in material prejudice to a substantial right of the accused." *United States v. Fletcher*, 62 M.J. 175, 179 (C.A.A.F. 2005) (citation omitted). The burden of proof under a plain error review is on the appellant. *See United States v. Bungert*, 62 M.J. 346, 348 (C.A.A.F. 2006) (citation omitted).

"Improper argument is one facet of prosecutorial misconduct." *United States v. Sewell*, 76 M.J. 14, 18 (C.A.A.F. 2017) (citation omitted). Prosecutorial misconduct occurs when trial counsel "oversteps the bounds of that propriety and fairness which should characterize the conduct of such an officer in the prosecution of a criminal offense." *Fletcher*, 62 M.J. at 178 (quoting *Berger v. United States*, 295 U.S. 78, 84 (1935)). Such conduct "can be generally defined as action or inaction by a prosecutor in violation of some legal norm or standard, *e.g.*, a constitutional provision, a statute, a Manual rule, or an applicable professional ethics canon." *United States v. Hornback*, 73 M.J. 155, 160 (C.A.A.F. 2014) (quoting *United States v. Meek*, 44 M.J. 1, 5 (C.A.A.F. 1996)).

Trial counsel are to limit arguments to evidence in the record and reasonable inferences that can be drawn from that evidence. *United States v. Baer*, 53 M.J. 235, 237 (C.A.A.F. 2000). While a trial counsel "may strike hard blows,

he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." *Fletcher*, 62 M.J. at 179 (quoting *Berger*, 295 U.S. at 88).

"[I]t is error for trial counsel to make arguments that 'unduly . . . inflame the passions or prejudices of the court members.'" *United States v. Schroder*, 65 M.J. 49, 58 (C.A.A.F. 2007) (omission in original) (quoting *United States v. Clifton*, 15 M.J. 26, 30 (C.M.A. 1983)). Trial counsel are also prohibited from injecting into argument irrelevant matters, such as facts not in evidence or personal opinions about the truth or falsity of testimony or evidence. *See id.* at 58; *Fletcher*, 62 M.J. at 179; R.C.M. 919(b), Discussion. To that end, courts have struggled to draw the "exceedingly fine line which distinguishes permissible advocacy from impermissible excess." *Fletcher*, 62 M.J. at 183 (quoting *United States v. White*, 486 F.2d 204, 207 (2d Cir. 1973)).

"[A]rgument by a trial counsel must be viewed within the context of the entire court-martial. The focus of [the] inquiry should not be on words in isolation, but on the argument as 'viewed in context.'" *Baer*, 53 M.J. at 238 (quoting *United States v. Young*, 470 U.S. 1, 16 (1985)). "[I]t is improper to 'surgically carve' out a portion of the argument with no regard to its context." *Id.*

"When a trial counsel makes an improper argument during findings, 'reversal is warranted only when the trial counsel's comments taken as a whole were so damaging that we cannot be confident that the members convicted the appellant on the basis of the evidence alone.'" *United States v. Norwood*, 81 M.J. 12, 19 (C.A.A.F. 2021) (quoting *Andrews*, 77 M.J. at 401–02). "We weigh three factors to determine whether trial counsel's improper arguments were prejudicial: '(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the conviction.'" *Andrews*, 77 M.J. at 402 (quoting *Fletcher*, 62 M.J. at 184) These factors are commonly referred to as the "*Fletcher* factors."

"[T]he lack of a defense objection is 'some measure of the minimal impact of a prosecutor's improper comment.'" *United States v. Gilley*, 56 M.J. 113, 123 (C.A.A.F. 2001) (quoting *United States v. Carpenter*, 51 M.J. 393, 397 (C.A.A.F. 1999)) (additional internal quotation marks omitted). In sum, "reversal is warranted only 'when the trial counsel's comments, taken as a whole, were so damaging that we cannot be confident that the members convicted the appellant on the basis of the evidence alone.'" *Sewell*, 76 M.J. at 18 (quoting *Hornback*, 73 M.J. at 160).

### 3. Analysis

We need not reach the issue of whether any of trial counsel's findings argument constituted prosecutorial misconduct, because "[e]ven were we to conclude that prosecutorial misconduct occurred, relief is merited only if that misconduct 'actually impacted on a substantial right of accused (*i.e.*, resulted in prejudice).'" *United States v. Pabelona*, 76 M.J. 9, 12 (C.A.A.F. 2017) (quoting *Fletcher*, 62 M.J. at 178). Here, we find Appellant has failed to establish any material prejudice to his substantial right to a fair trial.

Our analysis of the first *Fletcher* factor demonstrates that the severity of trial counsel's statements was low and did not permeate the entire trial. Rather, most of the statements highlighted by Appellant were limited to a few isolated comments during the rebuttal portion of trial counsel's findings argument—an argument that spanned over 25 pages of the transcript and took over 60 minutes to deliver during trial. Moreover, to the extent that trial counsel's argument was improper—if at all—it resulted from trial counsel's inartful attempt to emphasize reasonable inferences from the evidence. We also note that trial defense counsel's failure to object to any of the above-mentioned statements is "some measure of the minimal impact" of the impact of trial counsel's argument. *Gilley*, 56 M.J. at 123. Therefore, we find this factor weighs in the Government's favor.

The second *Fletcher* factor considers the measures adopted to cure the misconduct. On this point, we note that trial defense counsel did not object to any portion of trial counsel's argument and that the only curative instruction given to the panel came as a result of an objection by trial counsel. Furthermore, we see no evidence in the record to suggest that the panel disregarded the military judge's instructions regarding arguments by counsel. Therefore, we find this factor benefits neither party in this case.

The final *Fletcher* factor we consider is the weight of the evidence supporting the conviction. Here we find the Government's case, although primarily based upon the testimony of FM, was reasonably strong when taken as a whole. FM reported the assault the same night it happened and testified consistently with her initial report. Additionally, pictures taken of FM on the night of the assault showed injuries to her face and nose which were consistent with her initial report and testimony. Her testimony was also corroborated by other evidence showing that her phone was broken, that there was damage to Appellant's residence, and most importantly, that a weapon in a holster matching the description she provided was found in Appellant's house. We acknowledge that some evidence was presented during trial questioning FM's trustworthiness, specifically, that FM had made false statements during a child custody hearing. However, we also note the lack of any evidence to suggest that FM

had a motive to fabricate the firearm aspect of the assault. We therefore find the third factor also weighs in favor of the Government.

In conclusion, we are confident in the members' ability to adhere to the military judge's final instructions and to put trial counsel's argument in the proper context. We are furthermore confident that the members convicted Appellant "on the basis of the evidence alone." *See Sewell*, 76 M.J. at 18.

## C. Ineffective Assistance of Counsel

Appellant contends that he received ineffective assistance from his trial defense counsel. Specifically, Appellant asserts that his counsel were deficient by (1) "opening the door" and failing to object to evidence of Appellant's uncharged misconduct, and (2) failing to object to trial counsel's improper findings argument. Appellant requests that we set aside the findings and reassess his sentence. We disagree with Appellant's contentions and find no relief is warranted.

### 1. Additional Background

During trial, the military judge allowed testimony of Appellant's controlling behavior towards FM. In particular, the military judge, over defense objection, allowed FM to testify concerning two statements Appellant made to her prior to night of the offenses. The statements were: "I'm going to ruin your life" and "I will destroy everything you love." These statements as admitted did not differ from the statements on which the Government provided notice prior to trial. Nor did these statements differ from the way FM relayed them during her motions and findings testimony. However, during her findings testimony, FM testified about another time when Appellant made similar comments:

> He had asked me why I agreed to sign the divorce papers and I mean I wasn't gonna tell him that I started seeing somebody simply because I wanted to avoid an argument. He said, "if I find out you are seeing somebody, I will destroy everything you love. I hope you know that. And when I find out who it is, I will kill them."

Defense counsel did not object to this testimony.

Before findings, the Government also sought to elicit testimony that Appellant withheld FM's access to their money and would not let her leave the house with a credit card. However, the military judge precluded admission of these statements, finding the "probative value of this [evidence was] marginal and [was] outweighed by a danger of unfair prejudice." During direct examination, FM testified consistent with the military judge's ruling and did not discuss these matters. However, during cross-examination, trial defense counsel elicited testimony that Appellant provided FM with money to support her hobbies.

After cross-examination, the Government moved for reconsideration of the earlier ruling concerning FM's claims that Appellant controlled her money. The military judge granted the Government's motion for reconsideration and ruled the evidence was admissible. Highlighting the evidence elicited by the Defense that Appellant provided FM money and bought items to support her hobbies, the military judge stated, "Because the defense has used this as a shield and a sword, the door has been opened." On redirect examination, the Government elicited testimony about Appellant withholding FM's access to money by, among other matters, cutting her debit card in half and making her request money from Appellant whenever she wanted to purchase something.

On 5 August 2022, this court ordered Appellant's trial defense counsel, Major (Maj) KR and Captain (Capt) MR, to provide responsive declarations. We have considered whether a post-trial evidentiary hearing is required to resolve any factual disputes between Appellant's assertions and his trial defense team's assertions. *See United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997); *United States v. DuBay*, 37 C.M.R. 411, 413 (C.M.A. 1967). We find a hearing unnecessary to resolve Appellant's claims.

In their declarations to this court, both of Appellant's trial defense counsel stated that they argued against the admission of an "enormous amount of character evidence" concerning Appellant's controlling behavior toward FM. In response to the Government being allowed to elicit testimony concerning Appellant's controlling behavior, Maj KR stated that the Defense team made a strategic decision to elicit testimony from FM during cross-examination that Appellant "had been supportive of [FM]'s employment outside of the home and employment inside of the home with her home crafting business." Both defense counsel stated that it was important to challenge the Government's "controlling behavior" argument. Both trial defense counsel maintained that they attempted to be careful to not open the door to other evidence, and that they argued vigorously against the Government's contention they had opened the door.

Additionally, Maj KR provided that they did not object to Appellant's "I will kill them" statement because FM had provided multiple iterations of the conversations, and they wanted to allow the witness to provide inconsistent statements on direct examination. Trial defense counsel intended to use these inconsistencies "as ammunition during cross-examination to show how [FM] [was] 'making up' new statements exaggerating her former testimony in order to expose to the panel members that the witness [was] not being truthful." In the end, Maj KR provided that they decided not to "highlight" FM's statement on cross-examination out of concern that it would further emphasize her testimony.

Concerning Appellant's contention that failing to object to trial counsel's findings and rebuttal argument constituted deficient performance, both trial defense counsel again stated they made reasonable strategic decisions not to object to trial counsel's findings and rebuttal argument. Specifically, Maj KR stated that they did not object for several reasons. First, both trial defense counsel believed, having observed the entire court-martial, that trial counsel was overselling both her case and the evidence during her closing argument. Capt MR explained that she did not object to trial counsel's argument because she wanted to highlight trial counsel's statements during her own closing argument, and "use those statements against the prosecutor as overselling the case to the panel members." Secondly, both trial defense counsel stated that they decided not to object to some questionable statements by trial counsel during argument in a considered effort not to further highlight what were otherwise brief statements in lengthy argument and rebuttal argument. Capt MR explained that in her opinion, any objection may solidify for the members that the statement itself was important and one to be remembered during deliberations. Finally, Capt MR provided that she knew the military judge would be providing a standard instruction to the panel regarding "closing argument" not being evidence but rather the attorney's reasonable inferences from the evidence presented, which would bolster her above-mentioned strategy.

**2. Law**

The Sixth Amendment guarantees an accused the right to effective assistance of counsel. *Gilley*, 56 M.J. at 124. In assessing the effectiveness of counsel, we apply the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), and begin with the presumption of competence announced in *United States v. Cronic*, 466 U.S. 648, 658 (1984). *See Gilley*, 56 M.J. at 124 (citing *United States v. Grigoruk*, 52 M.J. 312, 315 (C.A.A.F. 2000)). We review allegations of ineffective assistance de novo. *United States v. Gooch*, 69 M.J. 353, 362 (C.A.A.F. 2011) (citing *United States v. Mazza*, 67 M.J. 470, 474 (C.A.A.F. 2009)).

We utilize the following three-part test to determine whether the presumption of competence has been overcome:

> 1. Are appellant's allegations true; if so, "is there a reasonable explanation for counsel's actions"?
>
> 2. If the allegations are true, did defense counsel's level of advocacy "fall measurably below the performance . . . [ordinarily expected] of fallible lawyers"?
>
> 3. If defense counsel was ineffective, is there "a reasonable probability that, absent the errors," there would have been a different result?

*Id.* (alterations in original) (quoting *United States v. Polk*, 32 M.J. 150, 153 (C.M.A. 1991)). The burden is on an appellant to demonstrate both deficient performance and prejudice. *United States v. Datavs*, 71 M.J. 420, 424 (C.A.A.F. 2012) (citation omitted).

"Defense counsel do not perform deficiently when they make a strategic decision to accept a risk or forego a potential benefit, where it is objectively reasonable to do so." *Id.* at 424 (citing *Gooch*, 69 M.J. at 362–63) (additional citation omitted). In reviewing the decisions and actions of trial defense counsel, this court does not second-guess strategic or tactical decisions. *See United States v. Morgan*, 37 M.J. 407, 410 (C.M.A. 1993) (citations omitted). It is only in those limited circumstances where a purported "strategic" or "deliberate" decision is unreasonable or based on inadequate investigation that it can provide the foundation for a finding of ineffective assistance. *See United States v. Davis*, 60 M.J. 469, 474 (C.A.A.F. 2005).

This court does "not measure deficiency based on the success of a trial defense counsel's strategy, but instead examine[s] 'whether counsel made an objectively reasonable choice in strategy' from the available alternatives." *United States v. Akbar*, 74 M.J. 364, 379 (C.A.A.F. 2015) (quoting *United States v. Dewrell*, 55 M.J. 131, 136 (C.A.A.F. 2001)). For this reason, defense counsel receive wide latitude in making tactical decisions. *Cullen v. Pinholster*, 563 U.S. 170, 195 (2011) (citing *Strickland*, 466 U.S. at 689). This also applies to trial defense counsel's strategic decisions. *Morgan*, 37 M.J. at 410. "Strategic choices made by counsel after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Akbar*, 74 M.J. at 371 (alterations, internal quotation marks, and citation omitted).

In making this determination, courts must be "highly deferential" to trial defense counsel and make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Moreover, "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (citation omitted).

### 3. Analysis

We find that Appellant has failed to meet his burden of showing deficient performance and has also failed to overcome the strong presumption that his trial defense counsel's performance was within the wide range of reasonable professional assistance. Both trial defense counsel provided reasonable explanations for their actions, and their individual and combined level of advocacy on Appellant's behalf was not "measurably below the performance ordinarily expected of fallible lawyers." *Polk*, 32 M.J. at 153. Furthermore, we find that

both counsel have also articulated multiple strategic reasons for their decisions, concerning both the character evidence and their decision not to object during trial counsel's argument, that are objectively reasonable. We will not second-guess their defense strategy. We also note that we evaluate defense counsel's performance not by the success of their strategy, "but rather whether counsel made . . . objectively reasonable choice[s] in strategy from the alternatives available at the [trial]." *See Dewrell*, 55 M.J. at 136 (quoting *United States v. Hughes*, 48 M.J. 700, 718 (A.F. Ct. Crim. App. 1998), *aff'd*, 52 M.J. 278 (C.A.A.F. 2000)). The declarations submitted by Appellant's defense counsel make clear that the defense team sought to shape the facts and narrative in the light most favorable to Appellant. Based on our review of the record, to include evidence and the declarations of defense counsel, the defense team was somewhat successful in this regard.

### III. CONCLUSION

The finding of guilty as to Specification 1 of Charge I is **SET ASIDE** and Specification 1 of Charge I is **DISMISSED**. We reassess Appellant's sentence to a dishonorable discharge, confinement for 27 months, reduction to the grade of E-1, a $500.00 fine, and a reprimand. The remaining findings and the sentence as reassessed are correct in law and fact, and no additional error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the remaining findings and the sentence as reassessed are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court